QUILLAN v. BRUNSWICK & BIRMINGHAM R. CO.

(District Court, S. D. New York. May 10, 1904.)

1. SHIPPING—CONTRACT FOR CHARTER OF VESSEL—PARTIES BOUND.

The agent of a vessel, who had previously made similar contracts with an individual acting both for a railroad company of which he was president and for a construction company, sent him a telegram, addressed to the railroad company, respecting the employment of the vessel; and an agreement was made for such employment by a telegram confirmed by a letter bearing the letter head of the railroad company, and signed by such individual as president *Held*, that the contract bound the railroad company, whatever may have been the actual intention of the president; it being apparent that he must have known that such was the intention and understanding of the agent of the vessel.

In Admiralty. Suit to recover damages for breach of an agreement for the employment of a vessel.

Robinson, Biddle & Ward, for libellant.

Davies, Stone & Auerbach and Herbert Barry, for respondent.

ADAMS, District Judge. This action was brought by the libellant, William J. Quillan, as master and managing owner of the schooner Sallie C. Marvel, to recover from the Brunswick and Birmingham Railroad Company the damages, amounting to about $2,500, claimed to have been suffered through a breach of an agreement for the employment of the schooner to carry a cargo of 800 tons of steel rails from Baltimore, Maryland, to Brunswick, Georgia. The agreement, which was made

in Baltimore in the month of May, 1903, was partly arrived at by telephone and partly by the exchange of telegrams and a letter from the respondent dated May 2nd. The contract was completed about the 4th of May. The libellant reported, as he contends, to the respondent about the 20th of May and on the 22nd of May, he placed the vessel at Jackson's wharf in the port of Baltimore to take the contemplated cargo, but the cargo was not furnished and after waiting till June 5th, 1903, the libellant, upon being advised that the cargo would not be furnished, sought other employment for the vessel.

The defence is that the respondent was not a party to the contract.

The vessel's business in Baltimore was in charge of S. B. Marts Company. The secretary of the company was negotiating with one E. C. Machen for the charter of the vessel. The libellant contends that at the time of the making of the contract, Machen was acting for the railroad company.

The respondent contends that Machen was acting for the Brunswick and Birmingham Construction Company, to which all the business of the railroad company, relating to its construction, had been transferred. There was a contract between the railroad company and the construction company which, inter alia, provided:

"The Company agrees to employ and hereby employs, the Contractor to construct its railroad and works, and further agrees, so long as the contractor is not in default hereunder to enter into no agreement with any other person or corporation for the construction of the same, or any part thereof without first obtaining the consent of the Contractor."

The testimony indicates a rather mixed state of affairs, owing to the business of the railroad company, being, to some extent, in the hands of Mr. Machen, who at one time was acting for the railroad and then again for the construction company. It appears that the Marts Company was dealing with Machen in both capacities. It had furnished vessels for practically the same kind of work, to him as agent of the construction company, as well as the railroad company, but after February, 1902, the dealings were with the construction company up to May, 1902, when some telegrams were sent to Machen, "Brunswick and Birmingham Railroad, Brunswick, Ga.," and in reply a letter, of which the following is a copy, was received by the Marts Company:

"Brunswick & Birmingham Railroad Company
Office of the President

E. C. Machen
    President

Brunswick, Ga., May 2nd, 1903.

Messrs. S. B. Marts Co.
    Baltimore, Md.
Gentlemen:—

Have just wired you in answer to yours of yesterday, leaving the matter of which vessel you take to your judgment. We want to get the rails here as quickly as possible, and if I understand it aright, the difference in freight between the 1200 and 8000 ton vessel will be, under the arrangement made, about $200.00. In other words, the 1200 ton vessel will charge $2.25 on 800 tons. If I am right, the matter of the $200.00 would cut but small figure, therefore I left the whole matter to your judgment.

Will wire Mr. Martin as suggested by you so we will get on this rolling.

I was in hopes that the Sparrow Point mill would roll these rails and save us the extra freight from Steelton, but as we have to do what we can in

these days when rail mills are chuck full of orders, and not what we would like to do, I can only thank you in advance for anything that you will do to serve our interests. Remember that time is very valuable to us in this matter.

Very truly,                                              E. C. Machen
                                                            President."

The Marts Company seems to have considered that in this transaction, it was dealing with the railroad company. There were letters written to the latter on May 4th, 9th and 14th, addressed to Brunswick & Birmingham Railroad, New York. The letter of May 4th mentioned the charter party of this schooner as being enclosed and asked for the signature of the railroad company. That of the 9th asked for the return of the charter party and that of the 14th repeated the request. It was not, however, returned, but it is alleged by the respondent was subsequently delivered to the libellant's agent. It has not been produced on the trial, nor its absence accounted for, both parties contending that it remains in the possession of the other.

It is said by Mr. Machen, on behalf of the respondent, that the letter of May 2nd was not actually signed by him but by his secretary, who took the dictation from him, and that he did not intend to have it signed as president of the respondent. Assuming the correctness of the contention that the signing was a mistake of the secretary, it does not seem to aid the respondent, because the letter was in reply to a telegram, dated May 1st, addressed to Machen, "Brunswick & Birmingham Railroad, Brunswick, Ga." Mr. Machen's position as president of the railroad was established. The circumstances seem to indicate something more than a "nominal" presidency by him, and I can not resist the conviction that this transaction was intended to be with the railroad company. I do not entertain any doubt that the Marts Company so meant and the intention must have been apparent to Machen, who had authority to bind the railroad company. If there had been only a mere acquiescence on Machen's part in the Marts Company's intention, it was sufficient to fix the liability upon the respondent, under the circumstances.

Decree for the libellant, with an order of reference.